IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| GREAT LAKES REINSURANCE (UK) PLC,  )<br><br>                Plaintiff,  )<br><br>vs.  )<br><br>GLENN KRANIG and NATIONAL EXCHANGE BANK AND TRUST,  )<br><br>                Defendants.  )<br>————————————————  ) | )<br>)<br>)<br>)<br>)   Civil No. 2011-122<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Great Lakes Reinsurance (UK) PLC's ("Great Lakes") Motion for Leave to Amend Complaint [DE 48] pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.  Defendants oppose the motion.  [DE 50].

## I.     PROCEDURAL AND FACTUAL BACKGROUND

On November 7, 2011, Great Lakes filed a complaint against its insured, Glenn Kranig ("Kranig"), and National Exchange Bank and Trust ("NEBAT")[1] requesting a declaratory judgment that the ocean marine insurance policy ("the Policy")[2] underwritten by Great Lakes and issued to Kranig covering his sailing vessel, "Solitude" ("the Vessel"), is *void ab initio* as a result of certain material misrepresentations made in the insurance application.[3]  On March 9, 2012,

---

[1]        NEBAT is named as loss payee in the in the insurance policy at issue.

[2]        The Policy, covering May 1, 2011 to April 1, 2012, was a renewal of a previous ocean marine insurance policy underwritten by Great Lakes (the "Previous Policy").  Compl., Ex. B [DE 1-2]; Pl.'s Discovery Mem. [DE 17].

[3]        Great Lakes relies on the admiralty doctrine of *uberrimae fidei*, which

imposes a duty of the utmost good faith and requires that parties to an insurance contract disclose all facts material to the risk. If an insured defaults on this duty, the contract may be avoided by

*Great Lakes Reinsurance (UK) PLC v. Kranig et al.*
Civil No. 2011-122
Page 2

defendants filed an answer and counterclaim [DE 7] and on March 19, 2012, Great Lakes responded to the counterclaim [DE 8].  On November 29, 2012, Great Lakes filed the instant motion.

According to the complaint, Great Lakes issued the Policy to Kranig through its underwriting agent, Osprey Special Risks Limited, based on representations Kranig made in the insurance application ("the Application") submitted to his agent, Theodore Tunick & Co. and purportedly reaffirmed in the renewal questionnaire.  Compl. ¶¶ 7-8; Ex. A [DE 1-1].  Kranig represented, *inter alia*, that "neither of the scheduled operators of the Vessel, Kranig and Christina Bonwit ('Bonwit'), had been involved in a loss the last 10 years (insured or not) or had been convicted of or pled no contest to a criminal offense."[4]  *Id*. ¶ 10.

On August 6, 2011, Bonwit released the Vessel's mooring in Elephant Bay, Water Island in order to move the Vessel to another mooring.  *Id*. ¶ 13.  In the process, the Vessel was grounded and ultimately destroyed.  *Id*. ¶¶ 13-14.  Subsequently, a "post-sinking investigation" revealed that Bonwit "had been involved in an automobile accident in Florida in 2006 in which several vehicles were damaged and she pled guilty to driving under the influence of drugs and alcohol."  *Id*. ¶ 15.  As a result of Bonwit's "prior losses and convictions," Great Lakes alleges the Policy is void, relying on a provision in the Policy stating "[t]his contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our

the insurer. A party's intent to conceal, or lack thereof, is irrelevant to the *uberrimae fidei* analysis. The only thing that matters is the existence of a material misrepresentation.

*AGF Marine Aviation & Transport v. Richard C. Cassin Cit Group/Sales Fin., Inc.*, 544 F.3d 255, 262 (3d Cir. 2008).

[4]     Great Lakes' discovery memorandum clarifies the Application, dated April 4, 2010, was made in connection with the Previous Policy. Pl.'s Discovery Mem. at 1 [DE 17].  Kranig submitted a renewal questionnaire dated April 5, 2011 in connection with the Policy.  *Id*.; *see* [DE 17-1].

*Great Lakes Reinsurance (UK) PLC v. Kranig et al.*
Civil No. 2011-122
Page 3

acceptance or continuance of this insurance."[5]  *Id.* ¶ 11; Ex. B at 15 [DE 1-2].

Great Lakes now seeks to amend the complaint to add factual allegations pertaining to Kranig's alleged (1) misrepresentations about his criminal record; and (2) acceptance of a return premium when Great Lakes declared the Policy void.  Specifically, Great Lakes seeks to include allegations regarding (1) criminal charges against Kranig in 2009 that he strangled Bonwit and pushed her off the Vessel, and his subsequent conviction for simple assault and battery, and (2) the acceptance of the full return premium by Kranig's attorney-in-fact, Master-Risk, Inc. ("Master-Risk"), the company through which Kranig financed the premium for the Policy.  Pl.'s Mem. at 3.  Defendants oppose the proposed amendments, claiming Great Lakes offers no explanation for its delay in proposing them.  Furthermore, defendants contend prejudice will occur as they must defend themselves against additional claims. Finally, Defendants argue the proposed amendments are futile.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides "a party may amend its pleading only with the opposing party's written consent or the court's leave," FED. R. CIV. P. 15(a)(2), where, as here, a responsive pleading has been served and the amendment is requested over 21 days after said service.  Rule 15(a) provides further that "[t]he court should freely give leave when justice so requires." *Id.*  Nonetheless, the policy favoring liberal amendments is not "unbounded." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990).  A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the

---

[5]     Great Lakes also alleges that Kranig failed to "have the Vessel properly surveyed" (prior to its sinking) as warranted.  Compl. ¶¶ 12, 17-18.

amendment would prejudice the other party." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)

(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.   DISCUSSION

### A.   Delay

Here, the record supports a finding that Great Lakes delayed filing the proposed

amendment, at least with respect the allegations of the return premium.  Great Lakes had

knowledge of facts regarding its tender of the return premium since December 28, 2011 – the

date Great Lakes' counsel submitted the tender on behalf of Great Lakes.  Ex. F [DE 49-6].  As

for Kranig's criminal record, Great Lakes states it only learned of the existence of those facts in

September 2012.  Pl.'s Mem. at 2 ¶ 5.  Great Lakes does not explain, however, why it waited

until November 29, 2012 to seek leave to amend.[6]  *See Tarkett, Inc. v. Congoleum Corp.*, 144

F.R.D. 289, 290 (E.D. Pa. 1992) (explaining the movant "bears the burden of proof in explaining

the reasons for delay in seeking leave to amend").

### B.   Prejudice

Nevertheless, delay alone does not justify denying a motion to amend.  *Cureton v. Nat'l*

*Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *see Antoine v. KPMG Corp.*, 2010

U.S. Dist. LEXIS 1907, at *12-14 (D.N.J. Jan. 6, 2010) (allowing plaintiffs to amend their

complaint one year after commencement of the action even though plaintiffs' counsel knew of

facts that would support plaintiffs' claim for over five months).  Rather, the delay "must be

coupled with a resultant burden on the court or prejudice to the other party." *Richter v. Pfundt*,

2009 U.S. Dist. LEXIS 120781, at *3 (E.D. Pa. Dec. 24, 2009) (citing *Cureton*, 252 F.3d at 273);

---

[6]     Defendants note that Great Lakes filed the present motion after the June 1, 2012 deadline set forth in the parties' joint proposed scheduling plan [DE 16].  Defs.' Resp. at 4.

*see Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (explaining in deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment").   "[I]t is the opposing party's burden to prove that such prejudice will occur." *Kiser v. General Electric Corp.*, 831 F.2d 423, 427-28 (3d Cir. 1987).   Ultimately, "[w]hether delay is undue depends on the facts and circumstances of the case."   *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 225 (E.D. Pa. 2012).

When examining the issue of prejudice, the court considers "the hardship to the [opposing party] if the amendment were permitted" and "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273 (finding prejudice where amendment would cause burdensome new discovery and significant new trial preparation); *see Kiskidee, LLC v. Certain Interested Underwriters at Lloyd's of London*, 2012 U.S. Dist. LEXIS 145867, at *11 (D.V.I. Oct. 10, 2012) (to demonstrate prejudice in an amendment context, an opposing party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely") (quoting *Lundy v. Adamar of New Jersey*, 34 F.3d 1173, 1189 (3d Cir. 1994)).   However, no prejudice will be found where the amendment does not result in new facts requiring extensive additional discovery.   *Adams v. Gould, Inc.*, 739 F.2d 858, 869 (3d Cir.1984).

Here, defendants' contention that they will suffer prejudice if the amendment is allowed is unavailing.   With respect to the allegations regarding Kranig's criminal record, defendants fault Great Lakes for not conducting a proper criminal background on Kranig, contending "[t]he failure to discover anything sooner should prejudice Great Lakes, not [defendants]."   Defs.' Resp. at 4-5.   Defendants do not explain, however, how the additional allegations regarding Kranig's

criminal history are prejudicial to them.  Kranig's criminal record was obviously known to him.

Moreover, defendants do not dispute receipt of notice regarding Kranig's criminal record during

the discovery process.[7]  *See Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp.

2d 376, 385 (D. Conn. 2008) (stating "[n]otice to the nonmoving party of the underlying facts

relied upon in the new claim or cause of action weighs against a finding of prejudice to the

nonmoving party"); 6 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal

Practice and Procedure § 1487 (3d ed. 1998) ("Wright & Miller") (stating courts have allowed

amendments, *inter alia*, "when the opponent could not claim surprise, but effectively should

have recognized that the new matter included in the amendment would be at issue"); *see, e.g.,*

*Jolly v. Cook*, 2004 U.S. Dist. LEXIS 1315, at *5 (D. Del. Jan. 30, 2004)( finding plaintiff "not

unduly prejudice[d]" and granting defendant leave to amend its answer to add failure to plead

exhaustion as an affirmative defense where plaintiff's deposition testimony confirmed he was

aware of his obligation to exhaust administrative remedies).

    With respect to allegations regarding Kranig's alleged acceptance of the return premium,

defendants argue they "will be prejudiced because the discovery deadline may preclude them

from investigation" thereof.[8]  Defs.' Resp. at 6. Defendants' argument is based on their assertion

that no evidence exists "that either Kranig or NEBAT were aware of the tender and alleged

acceptance of the return premium," despite Great Lakes' contention to the contrary.  Defs.' Resp.

at 5 (stating "Great Lakes offers no evidence for its contention that '[d]efendants have known all

---

[7]     According to Great Lakes, it propounded discovery on defendants referencing "the criminal case several
times," which defendants' counsel received on October 12, 2012.  Pl.'s Mem. at 5 n.1.  Great Lakes avers further that
on November 6, 2012, it produced "the entire Superior Court criminal file that it had obtained."  Pl.'s Mem. at 5 n.1.

[8]     The instant motion was filed November 29, 2012, one day before Great Lakes' 30(b)(6) deposition, *see* [DE
45], and approximately one and a half weeks before the December 12, 2012 fact discovery deadline.  *See* [DE 43]
(November 15, 2012 Order extending deadline to complete discovery to December 12, 2012).

*Great Lakes Reinsurance (UK) PLC v. Kranig et al.*
Civil No. 2011-122
Page 7

along about the tender and acceptance of the return premium'") (citing Pl.'s Mem. at 4)).  A letter dated December 28, 2011 from Great Lakes' counsel to Tim Rychcik (president of Master-Risk) – on which both Kranig and NEBT were copied – tendering the return premium strongly suggests otherwise.  Moreover, in questioning Great Lakes' delay in seeking leave to amend, defendants argue that Great Lakes' "counsel was responsible for the tender of the premium to Kranig's alleged attorney-in-fact.  The tender was sent on ***December 28, 2011*** . . . ." Defs.' Reply at 4 (emphasis in original).  Thus, it appears defendants were on notice of the return premium well in advance of the filing of the instant motion.[9]   *See Roller Bearing Co. of Am., Inc.*, 570 F. Supp. 2d at 385.

Regardless of defendants' knowledge or lack thereof, defendants have not met their burden in showing an unfair disadvantage or deprivation of the opportunity to present facts or evidence resulting from the addition of the proposed allegations.  The proposed amendment adds no new claims for relief against the defendants, but rather adds only allegations in support of the existing claim for declaratory relief.  Furthermore, defendants do not explain how the proposed amendment would cause undue difficulty in preparing their defense nor do defendants contend extensive additional discovery is required.  *See, e.g., Serrano Medina v. United States*, 709 F.2d 104, 106 (1st Cir. 1983) (eleventh-hour amendment adding new parties under conspiracy theory that would require extensive additional discovery would be prejudicial to defendants).  Indeed, additional discovery potentially necessitated by the proposed amendments appears negligible given (1) Kranig certainly knew of his conviction and (2) evidence exists suggesting both Kranig

---

[9]      In response to defendants' alleged lack of knowledge regarding the premium, Great Lakes states that "Kranig testified at his deposition on December 4, 2012 that he recalled receiving a check for the return premium, but he could not remember when or the amount of the check.  He testified also that he did not cash the check, which he lost or misplaced."  Pl.'s Reply at 3.

and NEBT have been aware of the tendered return premium since shortly after this case was filed.  *See* Ex. F [DE 49-6].

While the Court acknowledges that the parties have engaged in substantial discovery and that discovery is now in fact closed, case dispositive motions have not been filed and over three months remain until the trial.  Additional discovery could be permitted if necessary.

## C.        Futility

Finally, defendants oppose Great Lakes' motion on futility grounds.  Specifically, defendants contend, without further argument or supporting authority, that the proposed amendment is futile because an insurer must assert all defenses to liability in the denial of coverage letter to the insured and failure to do so constitutes a waiver of any omitted defenses.  *See* Defs.' Resp. at 1 (arguing "Great Lakes has waived the right to assert any additional grounds for denying coverage that were not expressed in Great Lakes' original coverage letter and Great Lakes should have been able to determine that these grounds existed at the time it denied coverage").[10]  Great Lakes offers no rebuttal.

"Futility" in the context of Rule 15 means the complaint, as amended, would fail to state a claim upon which relief could be granted.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *accord Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (explaining in determining whether a proposed amendment would be futile, courts apply the same standard as that applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure) (citation omitted).  However, "given the liberal standard for the amendment of

---

[10]        The Court assumes in referencing the "original coverage letter," defendants are referring to Great Lakes' denial of coverage letter dated November 7, 2011, Pl.'s Reply, Ex. 1 [DE 52-1], given the context in which their argument is presented.

pleadings 'courts place a heavy burden on opponents who wish to declare a proposed amendment futile.'" *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012) (quoting *Aruanno v. New Jersey*, 2009 U.S. Dist. LEXIS 2744, at *6 (D.N.J. Jan. 15, 2009)).

"Under Virgin Islands law, a party may be prevented from asserting a legal right or affirmative defense through showing of a waiver." *Abramsen v. Vince Bedminster*, 45 V.I. 3, 9-10 (Terr. Ct. 2002).  Waiver is defined as "the voluntary relinquishment of a known right." *Sunshine Shopping Ctr., Inc. v. Kmart Corp.*, 85 F. Supp. 2d 537, 543 (D.V.I. 2000) (quoting Comment (b) of Section 84 of the Restatement (Second) of Contracts).[11] Waiver requires "a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part." *Carter v. Exxon Co. USA*, 177 F.3d 197, 204 (3d Cir. 1999); *see also Western World Ins. Co. v. Delta Prop. Mgmt.*, 2010 U.S. Dist. LEXIS 125296, at *9 (W.D. Pa. Nov. 29, 2010) (stating "waiver of a contractual right must be proven by clear and convincing evidence showing that the insurance company voluntarily and intentionally relinquished a known right with full knowledge of all the facts").

Defendants provide no Virgin Islands authority for their position and the Court's research yielded none.  However, case law from courts within the Third Circuit, as well as other jurisdictions, does not support defendants' position.[12]  Indeed, a majority of jurisdictions hold

---

[11]     Section 4 of the Virgin Islands Code provides:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

1 V.I.C. § 4.

[12]     While case law of other jurisdictions are not controlling upon this Court, they are considered persuasive authority inasmuch as they have contributed to the development of general principles of insurance law. *See* 1 V.I.C. § 4; *Berne v. Aetna Insurance Co.*, 604 F. Supp. 958, 960 (D.V.I. 1985) (relying on "general principles of insurance

that an insurer does not per se waive policy defenses simply because it does not list all such

defenses in its letter denying coverage.  *See, e.g., Meth v. United Ben. Life Ins. Co.*, 198 F.2d

446, 447 (3d Cir. 1952) (applying Pennsylvania law and finding "[d]enial of liability on one

ground does not in all cases operate as a waiver of all other grounds"); *Waller v. Truck Ins.*

*Exchange, Inc.*, 11 Cal. 4th 1, 31, 900 P.2d 619, 636 (1995) (stating under California law, "denial

of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise,

impliedly waive grounds not stated in the denial" and stating "of the 33 sister states to consider

the issue, 32 agree" with this rule).[13]  Rather, "[t]he general rule [is] that in order for the insured

to claim a waiver or estoppel to rely upon particular defenses by a denial of liability upon a

different ground, it must be shown that he was lulled into security by the company's action so

that it would be unfair to permit the defense, or that there was a change of position, or prejudicial

reliance thereon."  16c-324 Appleman on Insurance § 9260.[14]

---

law as developed by courts throughout the nation").

[13]    *See also Pigeon Forge v. Midland Ins. Co.*, 788 F.2d 368, 371 (6th Cir. 1986) (defense of lack of timely notice not waived simply because it was not mentioned in the insurer's denial of coverage letter); *Finer Amusements, Inc. v. Citizens Ins. Co.*, 327 F.2d 773, 776 (7th Cir. 1964) (stating under Illinois law "an insurance company is not restricted in its defense in an action on a policy to the reason assigned in its refusal to pay if the insured has not been misled to his injury by the failure to give other reasons"); *Manheim v. State Farm Mut. Auto. Ins. Co.*, 359 Pa. Super. 223, 226, 518 A.2d 861, 863 (1986) (although better practice dictates that an insurance company will provide all reasons for rejection of claims in its rejection letter, failure to do so did not bar insurance company from raising defense in its pleadings not included in letter); *Ladd Constr. Co. v. Ins. Co. of North America*, 73 Ill. App. 3d 43, 49-50, 391 N.E.2d 568, 573 (1979) (stating "[a]n insurance company is not required to raise all possible defenses in its letter to the insured [and] [f]ailure to raise all defenses does not result in a per se waiver of the same"); 3 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 16.03 (stating "waiver can seldom justifiably be found based solely on denial of a claim on a ground different from that later asserted"); 8 Joseph M. Perillo ed., Corbin on Contracts § 40.11 (explaining "[m]ere omission to claim the defense and giving other reasons for refusal to perform are not in themselves a waiver").

[14]    *See Western World Ins. Co.*, 2010 U.S. Dist. LEXIS 125296, at *9-10 (stating "[a]bsent a showing of prejudice to the insured, the failure to raise all possible defenses in a denial of coverage letter is not a waiver. . . [I]n the context of an insurer's failure to assert all possible defenses to coverage, the courts apply an estoppel only when there is actual prejudice, that is, when the failure to assert all possible defenses causes the insured to act to his detriment in reliance thereon"); *Guberman v. William Penn Life Ins. Co.*, 538 N.Y.S.2d 571, 573, 146 A.D.2d 8, 12 (N.Y. App. Div. 1989) (stating "[w]hile it is true that an insurer's specification of one of several available grounds for disclaimer may be taken by the insured as an indication that the other grounds have been overlooked, as a basic

*Great Lakes Reinsurance (UK) PLC v. Kranig et al.*
Civil No. 2011-122
Page 11

Defendants provide no basis for their conclusory assertion that amendment is futile on the grounds that because Great Lakes did not include them in its denial of coverage letter, it has waived its right to include the criminal record and return premium allegations as additional defenses to coverage.  Defendants provide no evidence showing that Great Lakes "voluntarily and intentionally relinquished a known right," nor do defendants claim to have relied to their detriment on the denial of coverage letter.  Accordingly, defendants have not met their burden of demonstrating the proposed amendment is "clearly futile."  6 Wright & Miller § 1487 (explaining "[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper").

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED that

(1) Great Lakes' Motion for Leave to Amend Complaint [DE 48] is GRANTED;

(2) The amended complaint shall be designated the "First Amended Complaint" and deemed filed as of the date of this Order; and

(3) Defendants shall respond to the First Amended Complaint on or before 14 days from the date of this Order.

**Dated:** January 7, 2013                    S_____

**RUTH MILLER**
United States Magistrate Judge

---

matter of fairness we see no reason why this circumstance should operate to bar the later assertion of the other grounds for disclaimer where the insured cannot claim to have suffered any degree of prejudice").